UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

**JAN 4 2006**

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-85-GWU

APRIL WILSON,                                        PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Wilson

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Wilson

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, April Wilson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an obsessive compulsive disorder and depression with anxiety. (Tr. 14). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 16-17). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 30 years, 9th grade education, and lack of work experience could perform any jobs assuming that she had no exertional limitations, but did have the following non-exertional limitations. (Tr. 257). She: (1) would be restricted to simple, repetitive, one to two step work that involved low stress and no public contact, and only infrequent, brief, and casual co-worker and supervisory contact; (2) required a stable work environment with generally no change in tasks, workplace of the people involved; (3) could not perform work involving teamwork activities or interaction with others; (4) had moderate limitations in her ability to do basic mental work activities, and (5) could not work around crowds, e.g., the floor of a large store with unfamiliar people. (Id.)   The VE responded that there were jobs that such a person could

7

perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 258-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The plaintiff alleged disability due to anxiety attacks and nervousness around people, and testified that she had been forced to quit the two jobs she had briefly held at fast food restaurants because of these problems. (Tr. 57, 246). Although she testified that she could not stand crowds and had panic attacks two or three times a week, she managed to take care of her house, shop at a nearby store, and attend two different churches as often as she could go, at least once a week. (Tr. 250-1). Her hobbies were crossword puzzles, television, and some fishing. (Tr. 252). She had recently started treatment at a Comprehensive Care Center and was now taking Wellbutrin after have discontinued other medications due to side effects, but she could not really tell if the Wellbutrin was working. (Tr. 253). She alleged no specific physical problems in her application, but testified to ankle swelling and foot pain. (Tr. 248). Nevertheless, she was able to stand for 30-60 minutes, walk half a mile, and lift up to 50 pounds. (Tr. 249).

Few medical records were submitted, and many of them predated the onset date of January 1, 1999 by many years. All of the physical conditions mentioned in records from after the onset date were for apparently transient concerns, such as a tick bite (Tr. 164). In June of 2004, the plaintiff was seen with a complaint of edema

8

of the face and extremities. (Tr. 187). An echocardiogram was obtained and showed only mild mitral regurgitation. (Tr. 186). No functional restrictions are suggested. Therefore, the ALJ's finding that the plaintiff did not have a "severe" physical impairment is supported by substantial evidence.

Concerning the plaintiff's mental status, she underwent a consultative psychiatric evaluation by Dr. Kevin Eggerman on September 2, 2003. (Tr. 108). Although she described nervousness, panic attacks around people, and a compulsion to do certain things such as check her stove burners and wash her hands, she also informed Dr. Eggerman that she had friends, went to the store, and went to church two or three times a week and enjoyed doing so. (Tr. 109-11). Dr. Eggerman found her range of affect to be fair, and not depressed. She was primarily anxious, to a mild to moderate degree, and had fair concentration with mild distractabilty due to anxiety. (Tr. 111). He diagnosed an obsessive-compulsive disorder, commenting that the anxiety attacks did not meet the DSM criteria for a panic disorder, and assigned a current Global Assessment of Functioning (GAF) score of 55-60, with the highest score in the past year being 60. (Tr. 112). GAF scores in this range reflect moderate symptoms per the the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV). In terms of functional restrictions, Dr. Eggerman opined that the plaintiff would have a mildly to moderately limited ability to interact appropriately with the public, supervisors, and co-workers and respond appropriately to changes in a routine work setting. (Tr. 112).

9

Wilson

Two state agency psychologists reviewed the record at this point and concluded that the plaintiff did not have a "severe" impairment. (Tr. 114, 129).

Subsequent records from the Comprehensive Care Center (CCC) show that the plaintiff sought treatment early in 2004, again describing anxiety attacks. (Tr. 152). The staff psychiatrist noted no manic symptoms and no obsessive-compulsive symptoms, and described her mood as calm and euthymic, although her affect was restricted. (Id.).

He diagnosed Depression with anxious features and panic attacks, but assigned a GAF of 70, reflecting only mild symptoms per the DSM-IV. Paxil was prescribed.

At a counseling followup in May 2004, the plaintiff was said to be doing fairly well, but her medication was changed due to side effects.

In view of the GAF score of the treating psychiatrist, as well as the opinions of the state agency reviewers that, based on Dr. Eggerman's evaluation the plaintiff did not even have a severe mental impairment, the ALJ's decision is well supported by substantial evidence. Essentially, the restrictions he did find were gratuitous.

For this and other reasons described in the defendant's brief at pp. 5-11, the decision will be affirmed.

This the ___4/___ day of January, 2006.

10

Wilson

G. WIX UNTHANK
SENIOR JUDGE

11